FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 06, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SUZANNE M.,[1]

               Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner of Social Security,

               Defendant.

No. 4:19-CV-5201-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Suzanne M. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly determining that the impairments did not meet or equal listing 1.04A; 2) discounting Plaintiff's symptom reports; and 3) improperly weighing the medical opinions. In contrast, Defendant

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 13.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies the Commissioner's Motion for Summary Judgment, ECF No. 13.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—in light of the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

---

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 416.920(g).

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

On September 16, 2011, Plaintiff filed a Title XVI application.[18] Her claim for disability beginning that same date was denied initially and upon reconsideration.[19] An administrative hearing was held in 2014, after which Administrative Law Judge (ALJ) Caroline Siderius denied Plaintiff's claim.[20]

Following a denial of rehearing by the Appeals Council, Plaintiff appealed the ALJ's denial to federal court.[21] The federal court remanded the matter back to the ALJ to further develop the record as to Plaintiff's physical impairments, including obtaining a comprehensive physical consultative examination.[22] A second

---

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 150-56.

[19] AR 78-101.

[20] AR 17-76.

[21] AR 484-89 & 506-10.

[22] AR 490-505.

administrative hearing was held via video in 2018 before ALJ Siderius, who again denied the claim.[23]

In the recent denial of Plaintiff's disability claim, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since September 16, 2011;

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, diabetes, lumbar degenerative joint disease, fibromyalgia, depression, panic disorder without agoraphobia, PTSD, left elbow joint disease, and thyroiditis;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work except:

    she can lift/carry up to 20 pounds occasionally and 10 pounds frequently, sit up to six hours in an eight-hour workday and stand/walk up to four hours in an eight hour workday, and requires the ability to change positions from sit to stand every two hours (while remaining at the workstation). The claimant is limited to no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional crawling, kneeling, stooping, crouching and balancing; can do close reaching only with no extension beyond 25 degrees; occasional push/pull with the bilateral upper extremities; no working at unprotected heights and no operation of heavy machinery or equipment; occasional contact with the general public and coworkers.

---

[23] AR 419-62.

- Step four: Plaintiff had no past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff was capable of performing work that existed in significant numbers in the national economy, such as office helper, mail room clerk, and marking clerk.[24]

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinion of H.C. Alexander III, M.D., the testifying medical expert at the 2018 hearing;

- significant weight to the examining opinions of Wing Chau, M.D. and Manuel Gomes, Ph.D.; the opinion of the 2014 testifying medical expert William Spence, M.D.; and the reviewing opinions of Olegario Ignacio, Jr., M.D., Jeffrey Merrill, M.D., Diane Fligstein, Ph.D., and James Bailey, Ph.D.; and

- some weight to the examining opinion of Chad Anderson MSW, MHP.[25]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those

---

[24] AR 395-417.

[25] AR 407-09.

symptoms were not entirely consistent with the medical evidence and other evidence in the record.[26]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which upheld the ALJ's decision.[27] Plaintiff timely appealed to this Court.[28]

### III.   Standard of Review

A district court's review of the Commissioner's final decision is limited.[29] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[30] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[26] AR 404-07.

[27] AR 380-88.

[28] *See* 20 C.F.R. §§ 404.981 & 422.210.

[29] 42 U.S.C. § 405(g).

[30] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[31] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[32] The Court considers the entire record as a whole.[33]

Further, the Court may not reverse an ALJ decision due to a harmless error.[34] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[35] The party appealing the ALJ's decision generally bears the burden of establishing harm.[36]

## IV.   Analysis

### A.   Step Three (Listings): Plaintiff fails to establish consequential error.

Plaintiff contends the ALJ erred by finding that Plaintiff's impairments did not meet listing 1.04A, singly or in combination. Listing 1.04A is satisfied if (1) there is a disorder of the spine, such as degenerative disc disease, (2) resulting in

---

[32] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[33] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[34] *Molina*, 674 F.3d at 1111.

[35] *Id.* at 1115 (quotation and citation omitted).

[36] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

compromise of the nerve root or the spinal cord (3) with evidence of nerve root compression characterized by (a) neuro-anatomic distribution of pain, (b) limitation of motion of the spine, (c) motor loss (muscle weakness or atrophy with associated muscle weakness) accompanied by sensory or reflex loss, and (d), if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).[37]

Plaintiff raises several arguments against the ALJ's step-three finding, including that the ALJ failed to adequately explain her boilerplate step-three finding, the ALJ's finding was consequentially impacted by the ALJ's erroneousness finding as to Dr. Alexander's reviewing opinion as to fibromyalgia, and the ALJ failed to collectively view the objective medical evidence.

As to Plaintiff's first argument, although the ALJ's step-three analysis was boilerplate and did not articulate the ALJ's findings as to each of the listing 1.04A requirements, the ALJ's entire decision contains sufficient analysis as to the matters central to this contested 1.04A listing to allow for meaningful review by the Court.[38]

Second, the Court agrees with Plaintiff that the ALJ erroneously found that Dr. Alexander opined "that the record was insufficient to establish a diagnosis of

---

[37] 20 C.F.R. Ch. III Part 404, Subpt. P, App. 1, listing 1.04A.

[38] *See* SSR 17-2p.

fibromyalgia."[39] This finding is erroneous because Dr. Alexander testified that the record supported a diagnosis of fibromyalgia. Dr. Alexander then explained that because fibromyalgia is a central pain response for which the diagnostic criteria are only based on subjective evidence he was not able to consider the limitations of Plaintiff's fibromyalgia when offering his opinion as to Plaintiff's functional limitations because such an opinion must be based on medical evidence reflecting objective physical impairments.[40] In addition, Dr. Alexander did not testify that fibromyalgia was the "least supported" impairment by the objective evidence, as the ALJ found Dr. Alexander did, but rather that the majority of the medical records focused on Plaintiff's back, rather than on fibromyalgia-related tender points.[41] As a result, because Dr. Alexander determined that fibromyalgia is an impairment "which carries with it no functional *objective* physical impairment," Dr. Alexander did not add any limitations resulting from fibromyalgia pain or other subjective experiences of pain in the RFC.[42] Moreover, he did not consider Plaintiff's fibromyalgia symptoms when assessing whether listing 1.04A was satisfied.

---

[39] AR 406.

[40] AR 437-38.

[41] AR 429-30.

[42] AR 438.

The ALJ's erroneous findings as to Dr. Alexander's fibromyalgia diagnosis and opinion, however, did not consequentially impact the ALJ's step-three no-listing finding. This is because the ALJ's step-three finding was also based on the ALJ's finding that the objective medical evidence reflects that Plaintiff does not meet listing 1.04A's requirements, even when her spinal conditions are considered with her obesity and fibromyalgia, because she did have nerve root compression characterized by motor loss accompanied by sensory or reflex loss and positive straight-leg raises.

In this regard, Plaintiff relies on 20 C.F.R. § 416.929(d), which states that "[i]t is not necessary, unless the listing specifically states otherwise, to provide information about the intensity, persistence, or limiting effects of the symptoms as long as all other findings required by the specific listing are present," to bolster her argument that the medical records reflecting motor loss and two positive straight-leg raises are sufficient to satisfy listing 1.04A's contested requirements. This regulation, though, does not assist Plaintiff because the ALJ rationally determined that Plaintiff failed to establish that her nerve root compression was *characterized by* motor loss accompanied by sensory or reflex loss and positive straight-leg raises. On this record, which reflects that Plaintiff typically presented with normal motor strength and gait and negative straight-leg raises, [43] the ALJ's finding that

---

[43] *Compare* AR 302 (Aug. 2011: positive straight leg raise), AR 1804 (Feb. 2017: positive straight leg raise and Gaenslen's test, along with pain with lumbar

Plaintiff did not satisfy listing 1.04A is supported by substantial evidence, notwithstanding the ALJ's factual error as to Dr. Alexander's fibromyalgia diagnosis, because Plaintiff's nerve root compression was not characterized by motor loss accompanied by sensory or reflex loss and positive straight-leg raises.

---

extension and full lower extremity strength); *with* AR 243 (May 2011: able to trunk flex to reach ankles; straight leg raise was negative to 75 degrees, internal rotation was unremarkable, quite tender and diffusely sore with palpation just about everywhere); AR 248 (July 2011: reciprocal gait pattern); AR 253 (Sept. 2011: ambulates with a nonantalgic gait; decreased range of motion in regard to forward flexion as well as extension; diffuse lumbar paraspinal tenderness; straight leg raise is negative bilaterally; reflexes are equal); AR 1537 (Jan. 2012: back non-tender and normal inspection); AR 763 (Oct. 2013: normal range of the back, bilateral upper, and lower extremities, bilateral CVA tenderness to palpation); AR 743 (June 2014: normal range of motion, muscle strength, stability in all extremities with no pain on inspection); AR 1606 (Oct. 2016: normal upright posture, can heel and toe walk, tenderness absent in spine, straight leg raise negative, and Waddell's signs absent); & AR 625 (May 2017: unremarkable posture; cervical range intact; able to trunk flex about 20 degrees from full erect position before pain; negative straight leg raise to 80 degrees; 5/5 strength of all joints; ambulatory without assistive device; able to get up on toes and heels; able to get up and down from exam table with stool).

**B.      Plaintiff's Symptom Reports: Plaintiff establishes error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. The Court agrees.

When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[44] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[45] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with her other statements, improvement with treatment, indicated drug abuse, activities, poor work history, and the objective medical evidence.[46]

First, the ALJ discounted Plaintiff's testimony about her disabling physical symptoms because Plaintiff reported improvement with narcotic pain management to her treatment providers and that she was able to perform household

---

[44] *Molina*, 674 F.3d at 1112.

[45] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[46] AR 407.

responsibilities and activities of daily living to her satisfaction. That a claimant's reported symptoms were inconsistent with her improvement during treatment is a factor for the ALJ to consider.[47] And the ALJ may discount a claimant's symptom reports on the basis of inconsistent statements.[48] Here, though, neither the records cited by the ALJ nor the record as a whole reflect sustained improvement as to Plaintiff's back pain and fatigue with treatment or that Plaintiff was consistently satisfied with her ability to perform household and daily living activities without pain, fatigue, or other symptoms. In support of the ALJ's finding, the ALJ cited an August 18, 2017 treatment record from Plaintiff's pain management provider:

> The current pain level is 6/10. The average pain over the past week was 5/10. The worst pain this past week was 10/10. The patient feels 90% of their pain symptoms are relieved with current therapy. The patient feels that current therapy is adequate. She notes improvement in ability to perform household responsibilities and activities of daily living to her satisfaction with current therapy, family relationships, social relationships, sleep patterns, overall function and meeting responsibilities, but not mood.[49]

---

[47] *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (considering evidence of improvement).

[48] *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[49] AR 1786.

That same treatment record also indicates that Plaintiff "seems to be in mild pain," that she had not yet acquired the recommended lumbosacral (LSO) brace, and that "[s]he is otherwise doing well on the current medication regimen and I'd recommend no changes at this time."[50] Then a treatment record a month later states that Plaintiff was tearful, sad, overwhelmed, anxious, moving from sitting to standing, and constantly shifting in apparent pain—though she left, with a non-antalgic gait, fifteen minutes after taking pain medication.[51] Other records during this time frame reflect that Plaintiff reported less sustained improvement from medication and that she was still experiencing average weekly pain of at least 8/10.[52] At best, the entire record reflects that Plaintiff routinely complained of pain, particularly in her low back, and that her pain waxed and waned with medication. Simply because Plaintiff reported improvement in temporary pain relief and her ability to perform activities during the August 2017 treatment session does not constitute a clear and convincing reason to discount her symptom reports on this record, particularly since during that same appointment Plaintiff was observed to be in pain and reported her pain averaged 5/10.

Next, the ALJ discounted Plaintiff's testimony that she experiences fatigue as a medication side effect because she did not report fatigue as a medication side

---

[50] AR 1783-84.

[51] AR 1870.

[52] AR 1789, 1792, 1795, 1798, & 1802.

effect to her treating providers. An ALJ may discount a claimant's symptom reports on the basis of inconsistent statements.[53] Here, the ALJ correctly indicates that there are medical records indicating that Plaintiff was negative for fatigue or with decreased fatigue,[54] *but* there are almost three times as many medical records wherein Plaintiff reported fatigue, tiredness, or sleep disturbance.[55] Moreover, the ALJ relied on two records from July and August 2017 from the Pinnacle Pain Center, but during this same time period, a different provider, Dr. Matthew Fewel listed that Plaintiff reported fatigue and sleep disturbance.[56] The ALJ erred to

---

[53] *See Smolen*, 80 F.3d at 1284.

[54] AR 407 (citing AR 1782 & 1786, from July and Aug. 2017). *See also* AR 301-02 (Aug. 2011); AR 1039 (Jan. 2012); AR 1055 (Oct. 2013); AR 770 (Jan. 2014); AR 774 (Oct. 2014); AR 1798 (Apr. 2017); AR 1792 & 1795 (May 2017); & AR 1789 (June 2017).

[55] *See, e.g.*, AR 283 (Jan. 2011); AR 234 (Apr. 2011); AR 287, 289, 291, & 293 (March & April 2011); AR 297 (July 2011); AR 299 (Aug. 2011); AR 252 & 305 (Sept. 2011); AR 1034 (Oct. 2011); AR 307 (Nov. 2011); AR 327 (Feb. 2012); AR 333 (March 2012); AR 1060-62 (Oct. 2013); AR 751 (Aug. 2014); AR 779-87 (Oct. 2014); AR 795 & 801 (Dec. 2014); AR 840 & 851 (Feb. 2015); AR 1359-60 (Aug. 2016); AR 1454 (Sept. 2016); AR 1603 (Oct. 2016); AR 1622 & 1802 (March 2017); AR 1629 (Apr. 2017); & AR 1647 (July 2017).

[56] AR 1647.

interpret the treatment notes in their full context.[57] On this record, the ALJ's finding that Plaintiff failed to mention fatigue during some appointments cannot serve as a clear and convincing reason to discount her reported fatigue.

Third, the ALJ discounted Plaintiff's symptom reports because the record indicated that Plaintiff abused pain medications. Drug-seeking behavior can be a clear and convincing reason to discount a claimant's reported symptoms.[58] Here, the ALJ cited to records from the Pinnacle Pain Center from February to August 2017 but did not identify what information in these records indicated abuse of pain medications.[59] The Court assumes that the ALJ was relying on Plaintiff's continued use of marijuana—or residual THC levels—after she began treatment at Pinnacle

---

[57] *See Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations. We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record.").

[58] *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that evidence of drug seeking behavior undermines a claimant's reported symptoms); *Gray v. Comm'r, of Soc. Sec.*, 365 F. App'x 60, 63 (9th Cir. 2010) (recognizing that evidence of drug-seeking behavior is a valid reason for discounting a claimant's symptom claims).

[59] AR 407 (citing AR 1782-1858).

Pain Center in February 2017. When Plaintiff began treatment at Pinnacle Pain Center, the treatment record states: "A baseline UDS [(urine drug screen)] has been obtained today and I am more than willing to take over opiate medication management once we have obtained the results, providing she discontinues her current THC use."[60] The subsequent UDS records reflect that Plaintiff continued to have THC in her system and therefore it was noted in treatment records that her UDS was "inconsistent with prescribed therapies."[61] However, positive THC levels were "expected" by her provider as Plaintiff discontinued marijuana use.[62] Given that, even with Plaintiff's positive THC levels, her provider continued to prescribe opioids, along with prior providers' findings that there were no "red flags" concerning Plaintiff's prescription use,[63] Plaintiff's positive THC levels in 2017 do not constitute a clear-and-convincing reason, supported by substantial evidence, to support discounting Plaintiff's symptom reports. Moreover, the Commissioner does not defend the ALJ's reliance on Plaintiff's indicated abuse of pain medications and

---

[60] AR 1804-05.

[61] AR 1789, 1786, & 1782.

[62] AR 1786.

[63] AR 781, 1351, & 1614.

therefore this waived reason cannot serve to support the ALJ's decision to discount Plaintiff's symptom reports.[64]

Fourth, the ALJ discounted Plaintiff's symptom testimony because she had "quite high functioning activities of daily living," which were consistent with light-duty work.[65] If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.[66] Here, the ALJ highlighted that Plaintiff is a stay-at-home mom of four children,

---

[64] *See Justice v. Rockwell Collins. Inc.*, 117 F. Supp. 3d 1119, 1134 (D. Or. 2015), *aff'd* 720 F. App'x 365 (9th Cir. 2017) ("[I]f a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded.") (citation and internal quotations and brackets omitted); *Tatum v. Schwartz*, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463, *3 (E.D. Cal. Feb. 5, 2007) (explaining that a party "tacitly concede[d][a] claim by failing to address defendants' argument in her opposition"); *Kinley v. Astrue*, No. 1:12-cv-740-JMS-DKL, 2013 WL 494122, *3 (S.D. Ind. Feb. 8, 2013) ("The Commissioner does not respond to this [aspect of claimant's] argument, and it is unclear whether this is a tacit admission by the Commissioner that the ALJ erred or whether it was an oversight. Either way, the Commissioner has waived any response.").

[65] AR 407.

[66] *Molina*, 674 F.3d at 1113.

including twin then-two-year-olds, and that she shops and attends her doctors' appointments. The Commissioner did not defend the ALJ's reliance on Plaintiff's shopping with her husband and attendance at her doctor's appointments as a basis to discount Plaintiff's symptom reports. Therefore, the Commissioner conceded that the ALJ's finding in this regard was erroneous.[67]

As to Plaintiff's caring for her four children, the ability to care for others without help has been considered an activity that may undermine claims of disabling pain.[68] However, if the care activities are to serve as a basis for the ALJ to discredit the claimant's symptom reports, the record must identify the nature, scope, and duration of the care involved and this care must be "hands on" rather than a "one-off" care activity.[69] Here, the record reflects that on the days that Plaintiff's husband works, Plaintiff is home with her children, particularly the twins, from when her children wake up in the morning until about 2 p.m., when her husband gets off from work. The record also reflects that when her older children are home they assist Plaintiff with caring for the twins and housework, and that Plaintiff also receives assistance from her mother-in-law and sister.[70] The extent of this help and the extent of Plaintiff's "hands on" responsibilities with her

---

[67]*See Justice*, 117 F. Supp. 3d at 1134; *Kinley*, 2013 WL 494122, at *3.

[68] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[69] *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

[70] AR 201 & 446-48.

children are unclear. Although it appears that Plaintiff's care of the twins is "hands on," it is not clear that her childcare responsibilities are inconsistent with her reported need to rotate between sitting, standing, and walking, and resting when needed, or inconsistent with her testimony that she has pain sweeping, mopping, doing dishes, carrying laundry baskets, bending or picking items up; that she sleeps poorly due to pain and not feeling well; and that she experiences two to three "bad days" out of the week.[71] As the Ninth Circuit has recognized, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication."[72] Without a more developed record as to Plaintiff's activities of daily living, her activities-as-explained do not constitute substantial evidence to support a clear and convincing reason to discount her symptom reports.

Fifth, the ALJ discounted Plaintiff's symptom reports because Plaintiff had an extremely weak work history. Evidence of a poor work history that suggests that the claimant is not motivated to work is a permissible reason to discredit the claimant's claim that she is unable to work.[73] But before discounting the claimant's

---

[71] AR 446-55.

[72] *Smolen*, 80 F.3d at 1287 n.7 (citations omitted).

[73] *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); 20 C.F.R. § 416.929 (work record can be considered in assessing reported symptoms).

reported symptoms due to a poor work history, the ALJ is to consider other factors that could have contributed to the poor work history.[74] Here, the ALJ did not discuss the other factors that could have contributed to Plaintiff's poor work history, such as the alleged disabling condition itself or transportation and childcare obstacles. For the fourteen years before the second administrative hearing, Plaintiff had young children whom she cared for, with the assistance of others. In addition, Plaintiff had transportation obstacles as she did not have a driver's license.[75] Without discussing these work obstacles, the ALJ erred by discounting Plaintiff's reported symptoms based on a poor work history.

Finally, the ALJ discounted Plaintiff's reported symptoms because they were inconsistent with the objective medical evidence. Medical evidence is a relevant factor in considering the severity of the reported symptoms.[76] However, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[77] Here, this is the only remaining reason in support of the ALJ's decision to discount Plaintiff's reported disabling pain and physical symptoms—therefore, this alone cannot serve to discount Plaintiff's reported symptoms.

---

[74] *Cherry v. Apfel*, 5 Fed. App'x 500, 503 (7th Cir. 2001) (unpublished).

[75] AR 68.

[76] *Id.*

[77] *See Rollins*, 261 F.3d at 857.

Moreover, the ALJ failed to meaningfully articulate how the "largely benign physical examination findings documented in the record" were inconsistent with Plaintiff experiencing pain due to her well-documented severe degenerative disease with grade 2 anterior listhesis of L5 on S1 secondary to bilateral pars defects, with minimal motion of L5 on S1 between flexion and extension, along with her obesity.[78] The imaging from 2011 to 2017 consistently reveals severe degenerative disease at L5-S1 and bilateral pars defects with motion at the L5 on S1 between flexion and extension.[79] Plaintiff's treating providers found this spinal condition was the likely cause of Plaintiff's reported pain, notwithstanding Plaintiff's normal ambulation, full strength, and no motor or sensory abnormalities. For instance, Dr. Fewel stated, notwithstanding the observed normal strength and gait:

> 35-year-old woman with long history of lower back pain, some radicular complaints but rare compared to her lower back pain. I have no doubt that this problem is in part due to the spondylolisthesis at

---

[78] *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding); *Blakes v. Barnhart,* 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[79] AR 277-78 & 1824.

L5-S1. . . In the absence of surgery [which would be difficult due to her anatomy], she may have to live with it with pain management.[80]

Similarly, treating provider Linda Walby, M.D. stated in regard to Plaintiff's lower back pain: "No doubt, that this is in part due to the spondylolisthesis at L5-S1 which is minimally progressive since 2012. There is not a lot of movement overall at the L5-S1 level in flexion versus extension, but it does appear to increase some from the supine imaging (MRI) to her standing x-rays."[81]

Given these findings from treating providers, the ALJ fails to meaningfully articulate why Plaintiff's observed normal ambulation, muscle strength, and negative straight leg raises were grounds to discount her reported pain caused, at least in part, by her spondylolisthesis.[82] Moreover, the negative straight leg raises were consistent with Plaintiff's reports of little to no radiculopathic pain to her providers.[83] Accordingly, on this record, without a more meaningful discussion of the evidence by the ALJ, that Plaintiff's ambulation and strength were largely unaffected by her severe degenerative disc disease was not a clear and convincing

---

[80] AR 1607.

[81] AR 1610. *See also* AR 1347 ("The pars defects with grade 1 slip noted at the lowest L5-S1 level. It is quantified as 6mm with her supine. In stance, however, it was more than 11 mm for a supine-to-stand fairly significant change.").

[82] AR 1609-14.

[83] *See* AR 1359, 1582, 1603, 1607, 1610, 1647, & 1652.

reason (particularly by itself) to discount her reported pain, reduced range of lumbar movement, and need to rotate positions.

The ALJ's failure to support her decision to discount Plaintiff's reported symptoms with findings that are meaningfully articulated or supported by substantial evidence is consequential. If Plaintiff's symptom reports are fully credited, she is unable to sustain full-time work.

## C.    Medical Opinions: Plaintiff establishes error.

Plaintiff challenges the ALJ's weighing of Dr. Chau's and Dr. Alexander's opinions and failure to consider Nurse Bariletti's treatment recommendations. As discussed below, the Court finds the ALJ erred as to Dr. Chau's and Dr. Alexander's opinions but did not error as to Nurse Bariletti.[84]

---

[84] The weighing of medical-source opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician; 2) an examining physician who examines but did not treat the claimant; and 3) a reviewing physician who neither treated nor examined the claimant. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Generally, more weight is given to the opinion of a treating physician than to a reviewing physician's opinion and both treating and examining opinions are to be given more weight than the opinion of a reviewing physician. *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating physician's or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may

1.   <u>Dr. Chau and Dr. Alexander</u>

In May 2016, following remand, Dr. Chau conducted a consultative examination.[85] Dr. Chau had also previously treated Plaintiff in 2011 and diagnosed her with fibromyalgia, diabetes, hypothyroidism, and obesity, after observing her to be mildly obese and with no pain behavior, a reciprocal gait pattern, full cervical range of motion, negative Tinel's testing at wrists and elbows, full trunk flex, negative straight leg raise, and tenderness and diffuse soreness with "palpation just about everywhere."[86] After conducting the 2016 consultative examination and reviewing "records as provided," Dr. Chau diagnosed Plaintiff with degenerative spondylosis at L5-S1, morbid obesity, Hashimoto thyroiditis, and diabetes. Dr. Chau opined that Plaintiff was capable of performing full-time work at the light duty level if she could sit, stand, and walk as needed every 30 minutes, occasionally lift and carry twenty pounds, and occasionally reach overhead, but

---

not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. The opinion of an "other" medical source may be rejected for specific and germane reasons supported by substantial evidence. *Molina*, 674 F.3d at 1111. The opinion of a reviewing physician serves as substantial evidence only if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

[85] AR 625-33.

[86] AR 242-44.

that she should never climb ladders or scaffolds, stoop, kneel, crouch, or crawl, and should only occasionally balance and climb stairs and ramps.

Dr. Alexander testified at the administrative hearing in March 2018 and, based on his record review, diagnosed Plaintiff with fibromyalgia, hypothyroidism, stage-two degenerative disease of the lumbar spine with anterolisthesis at L5-S1 with bilateral pars defect, fatty liver, obesity, diabetes, and contusion of the left elbow. [87] Dr. Alexander opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, sit with no restrictions, stand and walk four hours with the recognition that standing would be "very hard to sustain," could not extend/reach her arms beyond 25 degrees, could not climb ropes or ladders, should not work on scaffolding, and could only occasionally navigate stairs and ramps, balance, bend, crouch, kneel, and crawl.

While the ALJ gave significant weight to Dr. Chau's opinion, the ALJ gave more weight to Dr. Alexander's opinion because Dr. Alexander had the benefit of reviewing the entire record and his opinion was more consistent with the objective medical evidence.[88] In addition, the ALJ gave less weight to Dr. Chau's opinion that Plaintiff needed to rotate between sitting, standing, and walking every thirty minutes because this limitation was not supported by Dr. Chau's examination findings or the record as a whole. The ALJ also gave less weight to Dr. Chau's

---

[87] AR 425-45.

[88] AR 408.

manipulative and postural limitations as they were unsupported by his own examination findings, which showed normal range of motion of the upper extremities and normal grip/pinch strength bilaterally, and because he provided no explanation to support these restrictions.

While an ALJ may give more weight to an opinion that is supported by an explanation or by treatment notes and is supported by and consistent with more of the record, the ALJ must meaningfully articulate the basis for these findings.[89] Here, the ALJ failed to do that when comparing Dr. Chau's and Dr. Alexander's opinions. For instance, the ALJ gave more weight to Dr. Alexander's opinion because it was based on a review of the entire record. Yet, Dr. Chau reviewed "records as provided" as part of his consultative examination, including the imaging pertinent to Plaintiff's spinal condition—the condition that Plaintiff's treating providers determined was the probable cause of her back pain, and resultant need to rotate positions.[90] Moreover, for the consultative examination, the Commissioner was to provide Dr. Chau with a folder containing material and

---

[89] *See* 20 C.F.R. § 416.927(b), (c); *Lingenfelter*, 504 F.3d at 1042 (recognizing that a medical opinion is evaluated as to the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole; *Orn*, 495 F.3d at 631 (same).

[90] AR 626.

relevant medical evidence relating to the ordered examination, along with the most recently completed disability report form."[91] Moreover, given that Dr. Chau's consultative examination was held pursuant to the court-ordered remand, the ALJ should have contacted Dr. Chau to further explain his opinion before discounting the opinion on the basis of lack of explanation.[92] Therefore, on this record, it was not legitimate for the ALJ to give more weight to Dr. Alexander's less-restrictive opinion as to Plaintiff's need to rotate between sitting/standing/walking because Dr. Alexander reviewed more of the record.

Also as discussed above, the ALJ's reliance on the medical records that revealed a normal gait and lower extremity strength cannot serve as substantial evidence to support the ALJ's finding that Dr. Chau's sit/stand/walk "as needed" opinion is unsupported by his observations or the record in general, as there is no independent medical evidence in this record to contravene Dr. Chau's and the treating provider's findings that Plaintiff's severe degenerative disc disease and other spinal defects cause pain due to slippage at L5-S1 and necessitate her need to shift position to offset the pain.[93]

---

[91] HALLEX I-2-5-20 & I-2-5-22.

[92] *See, e.g.*, HALLEX I-2-5-28 (Action Following Receipt of Requested Evidence).

[93] *See Orn*, 495 F.3d at 635 (recognizing that it is not legitimate to discount an opinion for a reason that is not responsive to the medical opinion).

Finally, the ALJ discounted Dr. Chau's manipulative and postural limitations because they were not supported by his own examination findings and he did not explain why these restrictions were necessary. An ALJ may permissibly reject check-box reports that do not contain any explanation of the bases for their conclusions.[94] However, if treatment notes are consistent with the opinion, a check-box report may not automatically be rejected.[95] Again, the ALJ failed to provide a meaningfully analysis to allow the Court to assess whether this finding is supported by substantial evidence. While Dr. Chau's manipulative and postural limitations are expressed in a check-box format, as discussed above, it is unknown whether the medical records he reviewed would support these limitations. Moreover, Dr. Alexander's testimony merely listed his opined postural limitations without providing any discussion as to why such postural limitations (which were no climbing ropes or ladders and no work on scaffolding, but permitted occasional navigating stairs and ramps, balancing, bending, crouching, kneeling, and crawling) were more supported by the record than Dr. Chau's postural limitations of never climbing ladders or scaffolds, stooping, kneeling, crouching, or crawling, and only occasionally climbing stairs and ramps and balancing. And the ALJ did not explain why Dr. Alexander's allowance of occasional stooping/bending,

_____

[94] *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014).

[95] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison*, 759 F.3d at 1014.

kneeling, crouching, crawling was more supported by and consistent with Plaintiff's spinal conditions, obesity, and fibromyalgia.

The ALJ's errors when weighing these medical opinions is not clearly inconsequential. Although the three identified jobs could be performed with rotating positions every thirty minutes, it is not clear on this record that the additional postural restrictions of no stooping/bending, kneeling, crouching, and crawling still permit for these three jobs.

### 2. Nurse Bariletti

Nurse Bariletti treated Plaintiff. On one occasion, Nurse Bariletti wrote in the treatment record "drink more water, elevate feet as able, decrease sodium intake."[96] Plaintiff argues the ALJ erred by failing to consider Nurse Bariletti's prescribed treatment of drinking more water and elevating feet as able.

An ALJ is not required to provide reasons for rejecting statements within medical records when those records do not reflect the claimant's physical or mental work limitations or otherwise provide information about the ability to work.[97]

---

[96] AR 744.

[97] *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (recognizing that where a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions"); 20 C.F.R. § 416.927(a)(1) ("Medical

Here, Nurse Bariletti's recommendation that Plaintiff drink more water and elevate feet as she is able is not a judgment about the severity of Plaintiff's conditions nor an assigned specific limitations about Plaintiff's ability to work. For instance, Nurse Bariletti did not recommend that Plaintiff be permitted atypical work breaks so that she could drink adequate water or to elevate her feet. The ALJ did not error by not weighing Nurse Bariletti's recommended treatment.

**D.      Remand: A remand for further proceedings is necessary.**

Where, as here, the Court finds that the ALJ improperly discounted Plaintiff's symptom reports and improperly considered the medical opinions, the Court has discretion as to remanding for further proceedings or for benefits.[98] Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate under the so-called "credit-as-true" rule to direct an immediate award of benefits.[99]

_____

opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions.").

[98] *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).

[99] *Id.* at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").

The Court is sensitive to the fact that this matter was previously remanded. And while the Court is wary of remanding this matter to the ALJ again, the Court determines that remand for further administrative proceedings is necessary.

Upon further questioning as to Plaintiff's activities of daily living, it may be clear that Plaintiff's childcare and other activities of daily living are inconsistent with Plaintiff's reported disabling symptoms and/or are consistent with sustained fulltime work with an appropriately limiting RFC. Also, it is not clear to what extent Plaintiff's functional limitations would have been lessened by the recommended LSO brace or shoe implant. If Plaintiff's impairments justify Dr. Chau's more limiting RFC, then an appropriately limiting RFC must be presented to the vocational expert to determine if an individual who can never crawl, kneel, stoop, crouch, and balance—along with the sitting/standing/walking as needed and other supported limitations—is capable of sustaining fulltime work.[100]

Accordingly, on remand, the ALJ is to develop the record with the more-recent medical records pertaining to Plaintiff's physical conditions (and if possible, identify the records provided to Dr. Chau for his consultative examination); obtain testimony from a medical examiner to discuss the functional limitations resulting from Plaintiff's conditions (if there is new evidence pertinent to listing 1.04A or another listing); retake Plaintiff's testimony; reweigh the medical-opinion evidence;

---

[100] *See* SSR 83-14.

reevaluate Plaintiff's symptom reports; and complete the sequential analysis,

including as necessary eliciting new testimony from a vocational expert.

### V.     Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is
        **GRANTED**.

2.      The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is
        **DENIED**.

3.      The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff
        REVERSING and REMANDING the matter to the Commissioner of
        Social Security for further proceedings consistent with this
        recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.      The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order,

provide copies to all counsel, and close the file.

**DATED** this  6th  day of April 2020.


                        _____
                              s/Edward F. Shea
                              EDWARD F. SHEA
                        Senior United States District Judge